**Gail D. MARION, Appellant,**

v.

**David E. MARCUS, M.D., Robert J. Lackamp, M.D., Stephen N. Blatt, M.D., and Professional Radiology of ST. Joseph, P.C., Respondents.**

No. WD 65331.

Missouri Court of Appeals, Western District.

Aug. 29, 2006.

Roy F. Walters, Kansas City, for Appellant.

D. Bruce Keplinger, Overland Park, KS, Gregory P. Forney and Charles H. Stitt, Kansas City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Gail Marion appeals the judgment, after a jury verdict, finding defendants not at fault in her loss of chance case after she developed breast cancer. Ms. Marion raises five points on appeal. The first challenges the trial court's exclusion, during Ms. Marion's rebuttal evidence, of the defendants' "biopsy log." The second through fourth points challenge the trial court's refusal to submit her proffered verdict directors containing additional alleged acts of negligence by each defendant doctor. The fifth point challenges the verdict director regarding allocation of fault to her regular treating physician, who was not a defendant. The judgment is affirmed.

## Facts

In January 2000, Ms. Marion conducted her monthly breast self-examination and discovered a pea-sized lump in her right breast. Within a few days, Ms. Marion scheduled a mammogram at Heartland Hospital in St. Joseph and a subsequent office visit with her primary care physician, Dr. Leanna Hoffman, to discuss the results. The mammogram included images of both breasts. The mammogram indicated two "lesions"[1] on the right breast, one of which was "superficial" and the other deep, near the chest wall. The mammogram also indicated a lesion on her left breast.

Three radiologists at Heartland Hospital read Ms. Marion's mammogram, with differing interpretations. Dr. Stevens recommended following up with a sonogram.

Dr. Marcus recommended following up with either a sonogram or MRI, but added that "MRI may be more advantageous" to evaluate the deep lesion, because MRI "will more reliably image the deep tissues near the chest wall." To break the "tie" between Drs. Marcus and Stevens, Dr. Lackamp also read the mammogram, and recommended that the deep lesion be evaluated with MRI, the superficial lesion with sonogram. Dr. Marcus's report, which includes Dr. Lackamp's addendum, classified the findings as "BI–RADS 0," indicating further radiological evaluation was needed.

Dr. Hoffman said that, after the mammogram was done, she determined by palpating the superficial lesion on the right breast that it was fibrocystic, not cancerous. Dr. Hoffman's only remaining uncertainty was the deep lesion. To evaluate the deep lesion, Dr. Hoffman ordered the MRI, not the sonogram, based on Dr. Marcus's report and Dr. Lackamp's addendum, and a conversation with a radiologist who clarified the reason for recommending MRI over sonogram. The MRI included both breasts. Dr. Blatt read the MRI in conjunction with the mammogram and reported that each lesion on the right breast was "likely to be benign." He also reported that the MRI was "not specific" as to the nature of the left breast lesion. Dr. Blatt's report added the following:

> Recommendations for follow-up include further evaluation of the lesion within the left breast with sonography at this time. In addition, the findings in the right breast also warrant close further evaluation due to report of a palpable nodule. Further evaluation of the right breast takes the form of a repeat x-ray evaluation ... in six months. These

---

1. "Lesion" is the generic term used by the doctors to describe a radiologically visible but

otherwise indeterminate abnormality.

recommendations should be carefully modified if the physical findings change.

BI–RADS 0. Additional imaging requested for further evaluation including sonography of the left breast and six month follow-up of the right breast.

After the MRI, Ms. Marion called Dr. Hoffman's office and was told by a nurse, who was reading from Dr. Blatt's report, that the palpable lump in the right breast was probably benign. Ms. Marion asked if she needed to return to Dr. Hoffman's office, and the nurse replied that the doctor's office would contact her if Dr. Hoffman wanted her to come back. Ms. Marion did not receive a call.

In March, Ms. Marion noticed the palpable lump in the right breast had grown larger, and scheduled another visit with Dr. Hoffman on March 27. Dr. Hoffman, relying on Dr. Blatt's report, recommended another mammogram six months after the date of the initial mammogram. Ms. Marion scheduled a mammogram August 15 and a general physical exam with Dr. Miller August 18. Dr. Miller examined Ms. Marion's breasts and determined that the right breast must be biopsied immediately. The biopsy was performed August 22, and the results showed that Ms. Marion had cancer. Ms. Marion subsequently developed a mastistic brain tumor, with effectively no chance of recovery.

Ms. Marion filed this suit against Drs. Marcus, Lackamp, and Blatt, alleging their actions negligently caused her to lose a material chance of recovery, which decreased from 75% in January and February, when she had the initial tests and was told the lump was benign, to 20% in August, when the lump was biopsied and found to be cancerous. The jury returned a verdict assessing no fault to the radiologist defendants.

## Discussion

### I.

■ Ms. Marion's first point on appeal alleges error in the trial court's refusal, during Ms. Marion's rebuttal, to admit Heartland Health Center's "biopsy log." The mammography technician whose deposition was offered to lay foundation for the log stated that the log listed patients for whom the radiologists at Heartland Health had ordered or recommended biopsy. The technician explained that the purpose of the log was to ensure follow-up on biopsy orders and recommendations. The log indicates briefly in one column the findings from radiological tests such as sonograms and mammograms, and in another column the findings from biopsy. Additional columns list the referring doctor, the radiologist, the patient, and a date. Ms. Marion's name does not appear on the log.

At trial, during rebuttal, Ms. Marion offered the log (1) to show that the radiologists did sometimes biopsy a "density," rebutting the radiologists' testimony that they did not recommend biopsy based on the mammogram findings because the mammogram indicated only a "density," rather than a "mass," and they would never biopsy a density; and (2) to show that Dr. Blatt had recommended biopsy in other cases that were "less serious" than Ms. Marion's, and therefore he should have recommended biopsy for Ms. Marion.

On appeal, Ms. Marion asserts different grounds for the relevance of the log, and abandons the grounds asserted at trial. She now argues that the log (a) rebuts the radiologists' claims that they declined to recommend biopsy because it was untimely so long as the radiology findings remained BI–RADS 0, incomplete; and (b) rebuts Dr. Blatt's claim that, in contrast to his written recommendation, he orally recommended to Dr. Hoffman that she order a biopsy. Based on the relevancy grounds

advanced at trial, the court found the log constituted improper rebuttal and, even if it were proper rebuttal, it was nevertheless inadmissible.

■ "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a). When an appellant challenges the exclusion of evidence, the "appellant is limited to the reason he gave at the time he made the offer of evidence." *Atherton v. Kansas City Power & Light Co.,* 356 Mo. 505, 202 S.W.2d 59, 64 (1947). "It is the obligation of a party to bring to the attention of the trial court its position as to relevancy of evidence offered. . . . It cannot advance a theory of admissibility on appeal different from that advanced at trial." *Frein v. Madesco Inv. Corp.,* 735 S.W.2d 760, 762 (Mo.App. E.D.1987). The relevancy grounds asserted at trial are abandoned here by not being raised on appeal, and the grounds now raised were not preserved by being presented to the trial court.

## II.

Ms. Marion's second point alleges the trial court erred in refusing to instruct the jury on *additional* alleged acts of negligence by Dr. Marcus. The court instructed the jury that it must find against Dr. Marcus if the jury found that Dr. Marcus breached the duty of care when he

recommended magnetic resonance imaging of the palpable mass in plaintiff's right breast instead of ultrasound imaging, or

did not recommend a biopsy of the palpable mass on plaintiff's right breast[.]

Ms. Marion asked the court to also instruct the jury to find against Dr. Marcus if the jury found the doctor breached the duty of care when he

characterized the palpable mass on plaintiff's right breast as "most likely represents a benign process" or "suggesting a non-malignant process," or

stated that MRI would, as compared to ultrasound, more reliably image the palpable mass on plaintiff's right breast[.]

■ Regarding our standard for reviewing a trial court's refusal to give a proffered jury instruction, both parties state that the trial court has discretion to give, or refuse to give, an instruction. The cases cited by the parties indeed stand for this proposition. However, those cases conflict with Rule 70.02(a), which declares that jury instructions "shall be given or refused by the court according to the law and the evidence in the case." The imperative "shall" in Rule 70.02(a) does not admit discretion on the part of the trial judge if the proffered instruction is supported by the evidence and the law and is in proper form. Rule 70.02(a), rewritten in 1993, conforms to the Missouri Supreme Court's holding that "a party is *entitled* to an instruction upon any theory supported by the evidence." *Vandergriff v. Mo. Pac. R.R.,* 769 S.W.2d 99, 104 (Mo. banc 1989) (emphasis added); *Mast v. Surgical Serv. of Sedalia, L.L.C.,* 107 S.W.3d 360, 380 (Mo.App. W.D.2003) (Holliger, J., dissenting) (citing *Vandergriff*). The refusal to give a verdict director supported by the law and the evidence is not a matter for the trial court's discretion. Rule 70.02(c) indicates the proper standard of review: "The giving of an instruction in violation of the provisions of this Rule 70.02 *shall constitute error,* its prejudicial effect to be judicially determined[.]" Rule 70.02(c) (emphasis added). Our Supreme Court has confirmed the standard under Rule 70.02(c). *Shutt v. Chris Kaye Plastics Corp.,* 962 S.W.2d 887, 890 (Mo. banc 1998); *State v. Richardson,* 923 S.W.2d 301, 318–19 (Mo. banc 1996); *Graham v.*

*Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993).

Our research indicates that many of the cases stating that the trial court has discretion to give or refuse an instruction constitute an unsupported and unreasoned expansion of the narrow circumstances in which the exercise of trial court discretion is justified. *Titsworth v. Powell,* 776 S.W.2d 416, 423 (Mo.App. E.D.1989), cited by respondents, states, "The submission or refusal to submit the tendered instruction is within the discretion of the trial court." But *Titsworth* cites *Butler State Bank v. D G Construction Co.,* 659 S.W.2d 239, 245 (Mo.App.1983), which states that the trial court has some discretion to assess whether it is necessary to *modify* an MAI instruction submitted to the jury, to conform to the evidence and avoid prejudice. *Butler* in turn cites cases recognizing a trial court's discretion over *withdrawal* instructions, not jury instructions in general: *Helming v. Adams,* 509 S.W.2d 159, 169 (Mo.App.1974); *Kasper v. Helfrich,* 421 S.W.2d 66, 71 (Mo.App.1967). Likewise, the case cited by appellant, *Shuler v. Premium Standard Farms, Inc.,* 148 S.W.3d 1, 5 (Mo.App. W.D.2004), cites *First State Bank of St. Charles, Mo. v. Frankel,* 86 S.W.3d 161, 173 (Mo.App. E.D.2002). *First State Bank* initially cites Rule 70.02(a) and states that proper instructions are a question of law, but then cites *Higby v. Wein,* 996 S.W.2d 95, 97 (Mo.App. E.D. 1999), for the proposition that the appel-late court reviews the trial court's refusal to submit an instruction for abuse of discretion. *Higby* cites *Quinn v. Lenau,* 996 S.W.2d 564, 569 (Mo.App. E.D.1999). *Quinn* cites *Titsworth* (which improperly expands the trial court's discretion as explained above), as well as *Linton v. Missouri Highway Transportation Commission,* 980 S.W.2d 4, 10 (Mo.App. E.D.1998). *Linton,* like *Titsworth,* expands trial court discretion over jury instructions without warrant. *Linton,* 980 S.W.2d at 10, says "the standard of review is abuse of discretion," citing *Apex Oil Co. v. Beldner,* 567 S.W.2d 336, 339 (Mo.App.1978). But *Apex* addressed the precise wording of a converse instruction and does not say the trial court has discretion in general to submit or refuse an instruction. 567 S.W.2d at 339. Respondents also cite *Mast v. Surgical Services of Sedalia, L.L.C.,* 107 S.W.3d 360, 365 (Mo.App. W.D.2003), which cites *Hampton v. Jecman,* 50 S.W.3d 897, 901 (Mo.App. W.D.2001), which cites *Quinn,* which incorrectly states the standard. Respondents also cite *Hackman v. Kindrick,* 882 S.W.2d 157, 159 (Mo.App. E.D.1994), which cites *Titsworth,* which states the incorrect standard.

The cases cited by the parties conflict with the Rule and Missouri Supreme Court precedent.[2] We review the trial court's refusal to give Ms. Marion's proffered instructions *de novo,* evaluating whether the instructions were supported by the evidence and the law. Rule

---

**2.** To the extent that the following cases state that the standard of review for refusal to give a proper MAI instruction is abuse of discretion they should no longer be followed: *Shuler v. Premium Standard Farms, Inc.,* 148 S.W.3d 1, 5 (Mo.App. W.D.2004). *Mast v. Surgical Serv's of Sedalia, L.L.C.,* 107 S.W.3d 360, 365 (Mo.App. W.D.2003). *Hampton v. Jecman,* 50 S.W.3d 897, 901 (Mo.App. W.D. 2001). To the extent that the following cases state that the standard of review for refusal to give a proper MAI instruction is abuse of discretion we decline to follow them: *First State Bank of St. Charles, Mo. v. Frankel,* 86 S.W.3d 161, 173 (Mo.App. E.D.2002). *Higby v. Wein,* 996 S.W.2d 95, 97 (Mo.App. E.D. 1999). *Quinn v. Lenau,* 996 S.W.2d 564, 569 (Mo.App. E.D.1999). *Linton v. Missouri Highway Transp. Comm'n,* 980 S.W.2d 4, 10 (Mo.App. E.D.1998). *Hackman v. Kindrick,* 882 S.W.2d 157, 159 (Mo.App. E.D.1994). *Titsworth v. Powell,* 776 S.W.2d 416, 423 (Mo. App. E.D.1989).

70.02(a). Nevertheless, we reverse only if we determine that error resulted in prejudice, Rule 70.02(c), and the error "materially affect[ed] the merits of the action," Rule 84.13(b). We express no opinion about the narrow circumstances that warranted trial court discretion in *Butler, Apex, Helming,* and *Kasper.*

■■■■ For disjunctive verdict directing instructions to be appropriate, each disjunctive alternative instruction proffered by a party must be supported by substantial evidence. *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo.App. W.D.2001). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." Id. "There must be substantial evidence[,] and a mere scintilla of evidence[ ] or speculative deductions and conclusions will not suffice." *Finninger v. Johnson,* 692 S.W.2d 390, 393 (Mo.App. E.D.1985).

Ms. Marion proffered an instruction that Dr. Marcus was negligent when he "characterized the palpable mass on plaintiff's right breast as 'most likely represents a benign process' or 'suggesting a non-malignant process.'" This instruction was properly refused because there was not substantial evidence that Dr. Marcus's statements caused Ms. Marion's lost chance of recovery. Each and every element of each theory of liability submitted to the jury must be supported by the evidence. Ms. Marion points us to no evidence, and we find none, directly indicating Dr. Marcus's statement prevented or hindered a correct and more timely diagnosis. Ms. Marion states correctly that the causal "connection can be proven by reasonable inferences from proven fact or by circumstantial evidence—direct proof is not required[.]" *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 339 (Mo.App. E.D.2000). But logic dictates that it is

irrelevant whether Dr. Hoffman was misled by Dr. Marcus's characterization of the palpable mass, because Dr. Hoffman did in fact order further testing. In other words, even if Dr. Hoffman believed Dr. Marcus's statement, Dr. Hoffman's ordering further testing renders Dr. Marcus's characterization moot. Therefore, the inference "from proven fact or ... circumstantial evidence" is that Dr. Marcus's characterization of the mass as benign or non-malignant did not prevent further testing and did not contribute to Ms. Marion's lost chance of recovery. No substantial evidence supported the causation element for the proffered instruction, and the instruction was properly refused.

■■■ Ms. Marion also proffered an instruction that Dr. Marcus was negligent when he "stated that MRI would, as compared to ultrasound, more reliably image the palpable mass on plaintiff's right breast[.]" The court did instruct the jury to find against Dr. Marcus if they found he "recommended magnetic resonance imaging of the palpable mass in plaintiff's right breast instead of ultrasound imaging." Ms. Marion's proffered instruction is merely duplicative of the instruction given. "The requirement [in Rule 70.02] that the instructions be simple, brief[,] and free from argument carries with it several concepts, including that the instructions be as short as possible and that they not be repetitious by including unnecessary duplications." *Rogers v. Bond,* 839 S.W.2d 292, 294 (Mo. banc 1992). The trial court does have the discretion to refuse duplicate submissions. Ms. Marion's proffered instruction was properly refused. Point two is denied.

### III.

In point three, Ms. Marion alleges instructional error identical to that in point two, but against Dr. Lackamp rather than

Dr. Marcus. Both doctors adopted the same report that gives rise to the allegations of negligence and the proffered instructions against them. The argument in both points is identical. Point three is denied.

## IV.

■■■■ In point four, Ms. Marion alleges the trial court erred in refusing to instruct the jury on additional alleged acts of negligence by Dr. Blatt. Our standard of review is explained in point two, *supra.* The court instructed the jury that it must find against Dr. Blatt if the jury found that Dr. Blatt breached the duty of care when he

recommended the palpable mass in plaintiff's right breast be followed by mammography instead of ultrasound imaging, or

did not recommend a biopsy of the palpable mass on plaintiff's right breast[.]

Ms. Marion asked the court to also instruct the jury to find against Dr. Blatt if the jury found the doctor breached the duty of care when he either

characterized the palpable mass as "likely to be benign" and "this finding reduces the likelihood" that the lesion is significant, or

failed ... to recommend either ultrasound or biopsy of the palpable mass on plaintiff's right breast, or

... told Dr. Hoffman [orally] to either ultrasound or biopsy immediately then ... failed to amend his report to recommend ultrasound or biopsy immediately ....

The second and third additional instructions proffered address the same alleged acts of negligence that were included in the instructions given by the trial court. Those proffered instructions are therefore duplicative of the instructions given, and were properly refused under the standard that instructions should "not be repetitious by including unnecessary duplications." *Rogers,* 839 S.W.2d at 294.

■■■■ The other additional instruction proffered by Ms. Marion—that Dr. Blatt negligently characterized the deep lesion as "likely to be benign" and stated "this finding" reduces the likelihood that the deep lesion was significant—is not duplicative. And although it is similar to the proffered instructions regarding Drs. Marcus and Lackamp that were properly rejected because they were not supported by substantial evidence showing causation, the evidence of causation is different regarding Dr. Blatt than regarding Drs. Marcus and Lackamp. Assuming—as Ms. Marion argues on appeal—that this proffered instruction refers to Dr. Marcus's report, the report's communication to Dr. Hoffman, and Dr. Hoffman's subsequent failure to order further tests due to the alleged negligent diagnosis by Dr. Blatt, the instruction was still properly refused. Dr. Blatt argues the instruction was properly rejected because the instruction was "incomprehensible" and a roving commission. We agree. This paragraph of the proffered instruction must "set out [the] act or omission complained of," as required by MAI 21.10 [1993 New]. "The test of correctness of an instruction is how the instruction will naturally be understood by the average juror." *Smith v. Kovac,* 927 S.W.2d 493, 498 (Mo.App. E.D.1996) (citing *Tietjens v. General Motors Corp.,* 418 S.W.2d 75, 86 (Mo.1967)). "[J]urors should be credited with ordinary intelligence, common sense, and an average understanding of the English language." *Id.* If the instruction intended to submit Dr. Blatt's alleged negligence in reporting to Dr. Hoffman his improper findings, it does not clearly do so. Because the medical record is full of "findings," and the instruction leaves unclear which finding is referred to, the use of the term "this finding"

is a roving commission. The instruction was not in proper form and was therefore properly rejected. For that reason we need not address the other arguments raised by Dr. Blatt concerning the instruction. Point denied.

## V.

■ In point five, Ms. Marion alleges the trial court erred in the comparative fault instruction regarding Dr. Hoffman, allowing the jury to assign a percentage of fault to Dr. Hoffman if the jury first found that any defendant was at fault. Specifically, Ms. Marion argues that the instruction improperly omitted a required element—that Ms. Marion had a material chance of recovery at the time Dr. Hoffman was negligent. Our standard of review is explained in point two, *supra.*

Respondents concede that the instruction was erroneous, but argue that no prejudice resulted. We agree. The jury was properly instructed to allocate fault to Dr. Hoffman only if it first found any defendant negligent. We assume that the jury followed the instructions given. *Lee v. Mirbaha,* 722 S.W.2d 80, 84 (Mo. banc 1986). The jury returned a verdict in favor of defendants, indicating the jury found the defendants were not negligent. "Because of this conclusion, the jury was never required to reach the question of apportionment of fault." *Id.* Therefore, although the instruction contained an error, the jury never needed to consider the erroneous instruction. The error resulted in no prejudice. The point is denied.

### Conclusion

The judgment is affirmed.

ROBERT G. ULRICH, Judge, and PAUL M. SPINDEN, Judge, concur.